**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **RONALD KIRCHNER,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-24-3745** |
| **MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

**MEMORANDUM OPINION**

Ronald Kirchner, a former Maryland state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, against the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Maryland Division of Correction ("DOC"), Baltimore City Correctional Center ("BCCC"), Warden David Greene, Commissioner Phillip Morgan, Tamika Johnson, Jessica Mullens, Karen Mitchell, Lt. Cynthia Perry, Sgt. Carla Nixon, Sgt. Lakeisha Braxton, Sgt. Andrea Davis, Sgt. Clarissa Massey, and Chaplain Christopher Wallace.[1] Kirchner claims that, while he was in the defendants' custody, they violated his right to exercise his religion and retaliated against him after he complained about the violations. ECF 8. The defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 30. Kirchner opposed the motion, ECF 32, and the defendants replied, ECF 33. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, the defendants' motion is granted.

[1] Defendants Gaia DiGiacomo, Stephen Grant, and Aramark Correctional Services, LLC were dismissed on March 6, 2026. ECF 34, 35.

## I. Background

Unless otherwise noted, the following allegations are from Kirchner's amended complaint, ECF 8. Kirchner is an Orthodox Jew. ECF 8, at 3–4. When he filed this suit, he was an inmate at BCCC, a jail run by DPSCS. ECF 8, at 1.

Kirchner was detained at BCCC in April 2024. On April 22 and 23, 2024, the first two nights of the eight-day Jewish Passover holiday, Kirchner was religiously obligated to participate in a Seder. ECF 8, at 16. On both nights, Metropolitan Transition Center ("MTC")—where there is a "Kosher Cage" that prepares kosher and "kosher for Passover" food for inmates and provides them with ritual Seder trays and grape juice—failed to provide Kirchner with Seder trays or grape juice. *Id.* at 6; ECF 8-1, at 9; ECF 8-2, at 1. Without those ritual items, Kirchner was "unable to observe [his] Passover service" because he could not participate in a Seder. ECF 8, at 8. Kirchner complained to Captain Alisha Shorty, Officer Ellis, and defendant Chaplain Wallace but nothing was done to remedy the issue. *Id.* at 6, 22. Rather, Shorty reiterated that there were no Seder trays available and told Kirchner that the Passover service that Wallace had scheduled for 7:30 p.m. on April 22 would not occur.[2] *Id.* Kirchner filed multiple grievances concerning the prison's failure to provide Seder trays and grape juice. *Id.*; ECF 8-1, 8-2.

The defendants submitted email correspondence from April 23, 2024 between Wallace and Nicole Hicks, a Correctional Dietary Regional Manager, showing that Wallace inquired into BCCC's lack of Seder trays. Wallace first asked the dietary staff at BCCC about them and then

[2] In one of his grievances attached to his complaint, Kirchner alleges that he was denied a Passover service on April 23, 2024 as well. ECF 8-2, at 11. Although Kirchner did not include this allegation in his complaint, the Court considers the grievance because it is integral to and explicitly relied on in the complaint and its authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

emailed Hicks, who replied that the delivery driver had delivered them to the wrong institution. ECF 30-3, at 13.

Kirchner alleges that observing "kashrut," or keeping kosher, is the only reliable way he can practice his faith at BCCC. *Id.* at 3. Kashrut dictates which foods he may eat and how the food must be prepared and consumed. *See id.* at 4–5. Kosher meals are prepared in the "Kosher Cage" at MTC, which Kirchner alleges does not meet kashrut standards. *Id.* at 5.

Kirchner further alleges that, on April 23 and 24, 2024, kitchen staff served him meals that contained chometz (leavened bread) prohibited during the Passover holiday. ECF 8, at 7; ECF 8-3, at 2. Kirchner also filed a grievance regarding this incident. ECF 8-3. In addition, Kirchner reported the issue to defendant Perry, who insisted that the meal was kosher because that was what MTC had provided; defendant Nixon gave the same response. ECF 8, at 15–16. Kirchner explained that the introduction of chometz into the Kosher Cage violated kashrut and that the kitchen could not produce kosher for Passover meals until it could be properly cleaned. *Id.* at 16–17. Kirchner alleges that Perry and Nixon, who ran daily dietary operations at BCCC, should have been aware of this problem and familiar with the kashrut laws for Passover. *Id.*

Kirchner makes various general accusations against the dietary staff responsible for providing kosher for Passover meals and Seder trays. He alleges that Chaplain Wallace contacted Johnson, Mullens, and Mitchell about providing Seder trays, and they said the trays would not be provided. ECF 8, at 13–15. Perry, Nixon, Braxton, Davis, Massey, and Boyd also ignored his complaints about the Seder trays and kosher for Passover meals, telling Kirchner that he would be given what MTC provided. *Id.* at 16–21. In addition, Kirchner alleges that Boyd, Massey, and Davis failed to provide an adequate primary course for several of his meals in August 2024, when

he was given only beans or peas. ECF 8, at 7–8, 17. For these incidents, too, Kirchner filed grievances. ECF 8-6, at 1; ECF 8-7, at 2–3.

According to Kirchner, DPSCS has a history of antisemitic behavior. He cites a prior lawsuit that he brought, also under RLUIPA and the First Amendment, *Kirchner v. Graham*, No. 8:19-cv-1242-PWG, and alleges that a settlement agreement between Kirchner, DPSCS, DOC, and various Western Correctional Institution officials stated that "all retaliation was to cease and desist immediately." *Id.* at 7.

Kirchner further alleges that BCCC failed to provide Chanukah services on December 8 and 10, 2023. ECF 8, at 23. Wallace told Kirchner that the service on December 8 was not held due to a faulty lighter. *Id.* Kirchner filed a grievance about the failure to conduct a Chanukah service, ECF 8-8, at 2, which was found meritorious in part by the Warden, who stated that the lighter had not been functioning that day and "was replaced, and the Hanukkah ceremony was performed for the remaining days," *id.* at 6.

Kirchner asserts that DOC, BCCC, Greene, and Morgan were deliberately indifferent to their subordinates' First Amendment violations. *Id.* at 8–13.

Kirchner brings two claims. First, he asserts the defendants violated his First Amendment rights to exercise his religion and to be from retaliation, and he seeks damages for the constitutional violations under 42 U.S.C. § 1983.[3] ECF 8, at 23–26. Second, he asserts that the defendants violated RLUIPA. He seeks declaratory, injunctive, and monetary relief. *Id.* at 26.

[3] Kirchner makes passing reference to his Eighth Amendment rights in his opposition brief, ECF 30-1, at 17, but he did not list an Eighth Amendment violation among his enumerated causes of action in the amended complaint.

## II. Standard of Review

The defendants move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6), or, in the alternative, for summary judgment under Rule 56.

### A. 12(b)(1) Motion to Dismiss

Rule 12(b)(1) permits a party to move to dismiss a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The defendants argue that Kirchner's § 1983 claims against the defendants in their official capacities should be dismissed under Rule 12(b)(1) because the defendants are immune from suit under the Eleventh Amendment.[4]

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (citation modified). Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citation modified).

---

[4] "Eleventh Amendment immunity presents a jurisdictional question that may bar a suit from advancing to the merits." *Indus. Servs. Grp. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023); *see Edelman v. Jordan*, 415 U.S. 651, 678 (1974) ("[I]t has been well settled . . . that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar."). Although the Fourth Circuit has been "unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)," *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000), this Court evaluates the defendants' Eleventh Amendment immunity argument under the Rule 12(b)(1) standard, even if Eleventh Amendment immunity implicates only the Court's Article III jurisdiction, not its subject matter jurisdiction. *See Rodriguez v. Roberson*, No. 5:23-CV-745-M-BM, 2024 WL 3898446, at *4 (E.D.N.C. July 29, 2024) (considering "Eleventh Amendment immunity under a 12(b)(1) framework").

When, as here, a defendant contests subject matter jurisdiction "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper"—a facial challenge to jurisdiction—the plaintiff "is afforded the same procedural protections as he would receive under a Rule 12(b)(6) consideration." *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013) (citation modified).

**B. 12(b)(6) Motion to Dismiss**

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating that they have a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely." *Jesus Christ Is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (citation modified).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation modified). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v.*

*Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (citation modified). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citation modified).

Kirchner does not have counsel. "[P]ro se filings are 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (citation modified). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation modified). The Court need only "determine the actual meaning of the words used in the complaint." *Id.* Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citation modified).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b).

### C. Motion for Summary Judgment

When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Kirchner that he had the right to respond to the defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond. ECF 31. Moreover, the defendants' motion, identifying summary judgment as possible relief, provided sufficient notice for Kirchner to have a reasonable opportunity to present relevant evidence or to notify the Court that he needed an opportunity for discovery before fully responding to the motion. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); Fed. R. Civ. P. 56(d). Kirchner asserts he has not yet had the opportunity to conduct discovery. ECF 32, at 2. Although Kirchner did not request this discovery through a Rule 56(d) declaration, the Court construes his requests for discovery in his opposition as a Rule 56(d) request. *See, e.g.*, *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Farabee v. Gardella*, 131 F.4th 185, 193–95 (4th Cir. 2025) (district courts must afford pro se plaintiffs leniency in regard to Rule 56(d)'s requirements).

Kirchner's Rule 56(d) request is denied because he fails to identify what discovery he needs to defeat summary judgment. *See, e.g.*, *Escobar-Salmeron v. Moyer*, 150 F.4th 360, 372 (4th Cir. 2025) (affirming grant of summary judgment despite self-represented party's Rule 56(d) declaration because declaration "contained only vague assertions as to matters upon which the district court should have allowed discovery" (citation modified)). Nor does he state how any discovery would "create[] a genuine dispute of material fact sufficient to defeat summary judgment." *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995) (noting Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment"). Kirchner's Rule 56(d) request is denied.

The Court rules on the summary judgment motion on the current record. Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citation modified). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (citation modified). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (citation modified); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to the nonmoving party." *Perkins*, 936 F.3d at 205 (citation modified).

## III. Discussion

For the following reasons, the Court dismisses all but one of Kirchner's First Amendment claims for failure to state a claim, grants summary judgment to the defendants on the only First Amendment claim Kirchner has plausibly alleged, and dismisses his RLIUPA claim.[5]

### A. Section 1983 Claims for First Amendment Violations

Kirchner brings § 1983 claims for alleged violations of his First Amendment rights.

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived them of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation modified). Two elements are essential to state a claim under § 1983: (1) plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Kirchner alleges that the individual defendants are persons acting under color of state law who violated his First Amendment rights to freely exercise his religion by failing to provide kosher

[5] The Court will not address the defendants' argument that Kirchner failed to exhaust his administrative remedies—a prerequisite for filing suit. ECF 30-1, at 23–24. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under Section 1997e(a) is mandatory; a plaintiff must exhaust his available administrative remedies before the court can hear his claim. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005). Here, the Court will assume without deciding—solely for purposes of the pending motion—that Kirchner exhausted his administrative remedies.

for Passover meals, nutritionally adequate meals, Seder trays and grape juice during Passover, and Chanukah services and by retaliating against him for filing grievances complaining about these failures. Kirchner has sued Greene, Morgan, and Wallace solely in their official capacities, and he has sued Johnson, Mullens, Mitchell, Perry, Nixon, Braxton, Davis, and Massey in both their official and individual capacities. *See* ECF 8, at 2–3. He seeks injunctive and declaratory relief and damages.

**1. Official capacity claims**

The official capacity claims must be dismissed because individuals sued in their official capacity enjoy sovereign immunity under the Eleventh Amendment, and none of the narrow exceptions to the rule applies here.

The individual defendants are state employees. "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

Even if the State does not consent, Eleventh Amendment immunity does not bar suit (1) when it is abrogated by Congress and (2) when the plaintiff seeks "prospective injunctive relief against state officials acting in violation of federal law." *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (citation modified). The first exception, abrogation

by Congress, does not apply here. Congress did not abrogate Eleventh Amendment immunity for § 1983 claims in federal court. *See Will*, 491 U.S. at 66. The second exception does apply to Kirchner's request for prospective injunctive and declaratory relief. The problem for Kirchner is that he is no longer in custody. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). Thus, Kirchner's requests for prospective injunctive and declaratory relief are moot.

Kirchner insists that an exception to the mootness doctrine applies. He argues that his claims for injunctive and declaratory relief are not moot because the allegedly unconstitutional practices "are capable of repetition yet evading review." ECF 32, at 1. "The 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combine[]: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (citation modified). This exception to the mootness doctrine does not apply here because Kirchner was released from custody while this lawsuit was pending and there is no reasonable expectation that he will return to custody and be subjected to the same treatment again. *See Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007) (holding that the capable of repetition, yet evading review exception does not apply when it requires the court to "forecast bad behavior" and to assume the plaintiff will be in the same situation again); *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 249 (4th Cir. 2005) (holding that capable of repetition, yet evading review exception did not apply to former detainee's claims because he had been released and the court "presume[s] that [plaintiff] will abide by the criminal laws . . . in the future").

Kircher also argues that the voluntary cessation exception to mootness applies. This exception ensures that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citation modified). It applies when the defendant has ceased the challenged behavior, but it is not "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 360 (citation modified). A defendant fails to meet "its heavy burden to establish that its allegedly wrongful conduct will not recur when the defendant expressly states that, notwithstanding its abandonment of a challenged policy, it could return to the contested policy in the future," or "when the defendant retains the authority and capacity to repeat an alleged harm." *Id.* at 364–65. In the prison context, the paradigmatic voluntary cessation case entails a constitutional challenge to a prison practice or policy, such as the prison's conditions of confinement, in response to which the prison changes the policy to moot the litigation, only to reinstate the conduct after the litigation ends.

The voluntary cessation exception is inapplicable to this case because Kirchner does not challenge a constitutionally offensive practice or policy that the defendants could cease during litigation and resume once litigation ends. *See Porter*, 852 F.3d at 364–66 (describing voluntary cessation exception as a mechanism to challenge since-changed "policies" or "practices"); *see also Burke v. Clarke*, 842 Fed. App'x. 828, 835 (4th Cir. 2021) (holding voluntary cessation exception applied because prison did not disclaim any intention of returning to its former "policy"). Kircher does not allege that the prison had a policy or practice of refusing to provide detainees kosher for Passover meals, to light the menorah for Chanukah, or to provide Seder trays and grape juice at

Passover. Rather, Kirchner alleges the defendants failed to do those things on discrete occasions in violation of the prison's policies and practices.[6]

Kirchner's § 1983 claims for damages against the individual defendants in their official capacity are barred by the Eleventh Amendment and dismissed without prejudice. His claims for prospective injunctive and declaratory relief against the individual defendants in their official capacities are moot and dismissed without prejudice.

**2. Individual capacity claims**

With Kirchner's claims for injunctive and declaratory relief dismissed, his claims for damages under § 1983 against Johnson, Mullens, Mitchell, Perry, Nixon, Braxton, Davis, and Massey in their individual capacities remain. For the following reasons, the Court dismisses all but one of Kirchner's First Amendment claims for failure to state a claim under Rule 12(b)(6). Kirchner's claim that he was denied Seder trays and grape juice during Passover is resolved under Rule 56, and judgment on that claim is granted to the defendants.

**a. Free Exercise Clause**

The First Amendment's Free Exercise Clause "protects against laws that discriminate against or among religious beliefs or that restrict certain practices because of their religious conduct." *Alive Church of the Nazarene, Inc. v. Prince William Cnty., Va.*, 59 F.4th 92, 108 (4th Cir. 2023). To violate the Free Exercise Clause, a law, regulation, or government policy must "burden[] . . . religious exercise." *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021).

[6] In his amended complaint, Kirchner suggests he may be seeking relief for First Amendment violations on behalf of other Jewish inmates. ECF 8, at 25–26. If Kirchner intended to assert claims on behalf others, those claims cannot proceed because Kirchner, a pro se plaintiff, cannot pursue a class action challenging prison policies or practices. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). Moreover, if Kirchner did retain counsel and if he were to seek injunctive and declaratory relief on behalf of other Jewish detainees, those claims would be moot because Kirchner is no longer detained.

The First Amendment right to free exercise of religion extends to individuals who are incarcerated. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). But an incarcerated person's First Amendment rights are limited to those "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Heyer v. U.S. Bureau of Prisons*, 984 F.3d 347, 355 (4th Cir. 2021) (citation modified). To state a claim for a violation of the Free Exercise Clause, an inmate must allege: "(1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). "A practice or policy places a substantial burden on a person's religious exercise when it 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hammock v. Watts*, 146 F.4th 349, 365 (4th Cir. 2025) (citation modified).

Kirchner alleges that he holds a sincere religious belief in Orthodox Judaism. Kirchner claims the prison substantially burdened his ability to practice his religion (i) by denying him kosher for Passover food that his religion required him to consume; (ii) by denying him nutritionally adequate food; (iii) by failing to offer a Chanukah service on two instances during Chanukah 2023; and (iv) by failing to provide him with Seder trays and grape juice for the first two nights of Passover 2024. The Court addresses each in turn.

First, Kirchner complains that the prison denied him food that his religion required him to consume by failing to provide him with a meal that was kosher for Passover. It is true that "courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin v. McGuinnis*, 357 F.3d 197, 203 & n.7 (2nd Cir. 2004) (collecting cases). For instance, a prison's policy that supplied Orthodox Jewish inmates with only one frozen kosher dinner supplemented with nonkosher

vegetarian or nonpork meals has been held to violate the prisoners' free exercise rights. *Ashelman v. Wawrzaszek*, 111 F.3d 674, 677 (9th Cir. 1997). And a prison's policy denying Muslim inmates nutritionally sufficient meals after sunset and before dawn for the entire month of Ramadan has also been held to substantially burden the prisoners' free exercise rights. *Makin v. Co. Department of Corrections*, 183 F.3d 1205, 1208–09 (10th Cir. 1999).

Here, Kirchner does not allege that the prison has a practice or policy that denies him food that his religion requires him to consume. In fact, Kirchner admits that the prison has a policy and practice of providing kosher meals—including, it seems, kosher for Passover meals—because, as he alleges, there is a designated kitchen "in which the kosher diet meals are prepared" called the "Kosher Cage." ECF 8, at 5. Rather, Kirchner complains that the prison did not comply with its own policy by failing to provide him with kosher for Passover meals (by serving him chometz) on two occasions during the week-long Passover holiday. Those discrete isolated incidents are insufficient for Kirchner to state a claim that the prison violated his free exercise rights under the First Amendment. *See Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (affirming dismissal of First Amendment claims because "mistakenly serving [plaintiff] nonkosher food" in a few "isolated incidents" was insufficient to allege a free exercise violation).

Next, Kirchner alleges that he was served only beans or peas as his primary course for several meals throughout August 2024 and that this was nutritionally inadequate. It is not clear from Kirchner's pleading whether he is alleging that the beans and peas were nutritionally inadequate, that the beans and peas he received were not kosher, or both. The Court assumes he alleges both.

The denial of nutritionally adequate food can implicate either the First or Eighth Amendment. Under the Free Exercise Clause of the First Amendment, "a prisoner has a right to a

nutritionally adequate diet that is consistent with his religious beliefs." *Coleman v. Jones*, No. 20-7382, 2022 WL 2188402, at *5 (4th Cir. June 17, 2022); *see also Lovelace v. Lee*, 472 F.3d 174, 198–99 (4th Cir. 2006) ("Under both the Free Exercise Clause and RLUIPA in its most elemental form, a prisoner has a 'clearly established right to a diet consistent with his religious scruples.'" (citation modified)); *Ross v. Blackledge*, 477 F.2d 616, 619 (4th Cir. 1973) (remanding for evidentiary hearing on whether "there is adequate nourishment in the pork-free foods currently available to [Muslim] prisoners"). Under the Eighth Amendment, "[i]t is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (citation modified); *see also Hammock v. Watts*, 146 F.4th 349, 361 (4th Cir. 2025) ("[P]risoners have a right to nutritionally adequate food" and "under some circumstances inadequate, unsanitary food service can be sufficiently serious to satisfy the objective element of an Eighth Amendment claim." (citation modified)).

Kirchner's allegation that he received "nutritionally inadequate" nourishment because he was given peas or beans as a main course for one of his daily meals on several days in August 2024 is insufficient to state a constitutional violation under the First or Eighth Amendment. He does not, for example, explain how a handful of meals with peas or beans as a main course substantially burdened his religious beliefs. *See Fuller v. Ishee*, No. 1:22-cv-00063-MR, 2022 WL 2135004, at *2 (W.D.N.C. June 13, 2022) (finding allegations of First Amendment violation vague and conclusory and observing plaintiff "does not explain why the medical diet is not an adequate substitute for a kosher diet, or how this substitution substantially burdened his sincere religious beliefs."). Nor does Kirchner allege that the food "present[ed] an immediate danger to [his] health and well being." *Shrader*, 761 F.2d at 986; *Sims v. Mich. Dep't of Corr.*, 23 Fed. App'x. 214, 216

(6th Cir. 2001) (dismissing claim that a cup of fruit for one meal of multi-meal-per-day diet was nutritionally inadequate under the Eighth Amendment when plaintiff failed to "allege that he was denied sufficient food on a daily basis or that he could not maintain his health based on the diet provided him"); *Quarles v. Boyd*, No. 5:18-CV-P7-TBR, 2018 WL 2293957, at *2 (W.D. Ky. May 18, 2018) (plaintiff's "broad allegation" that the food he was given was not nutritionally adequate could not support an Eighth Amendment claim "without more detail"). Kirchner's claims that being served a few meals with beans and peas as a main course violated his constitutional rights are dismissed.

Next, Kirchner alleges that the prison failed to observe Chanukah on two occasions.[7] In a factually similar case, *Kravitz v. Fischer*, a court held that denying prisoners Chanukah candles on a single occasion was de minimis and did not substantially burden their sincerely held religious beliefs. No. 9:12-CV-1011 (LEK/TWD), 2014 WL 4199245, at *13 (N.D.N.Y. Aug. 22, 2014). This Court agrees with *Kravitz*. As in *Kravitz*, the prison's failure to observe Chanukah on two evenings of the eight-night holiday did not substantially burden Kirchner's religious exercise. The burden was de minimis. And even if the failure to observe Chanukah on two occasions did substantially burden his ability to exercise his religion, Kirchner has not alleged that the burden resulted from a prison "practice or policy," *Hammock*, 146 F.4th at 365, of denying Jewish detainees the ability to observe Chanukah. Rather, Kirchner suggests in his amended complaint that Chanukah was celebrated as a matter of course at BCCC. ECF 8, at 23. Because the alleged

[7] Although a Seder tray consists of ceremonial food products, Kirchner's denial of a Seder tray is better analyzed as the denial of a ritual object—akin to a Muslim prayer rug or a Jewish menorah—rather than a religious dietary requirement. The same is true of the grape juice, which is consumed as part of the Seder ritual. Moreover, for the sake of resolving this motion, the Court assumes that observing Chanukah and participating in a Seder are essential aspects of Jewish religious practice.

burden on Kirchner's ability to celebrate Chanukah was de minimis, he has not stated a free exercise claim on those grounds.[8]

Finally, Kirchner alleges that he was denied Seder trays and grape juice on April 22 and 23, 2024, the first two nights of Passover. Since members of the Jewish faith only partake in a Seder on the first two nights of the week-long Passover holiday, the prison's failure to provide a Seder tray and grape juice on both of those nights plausibly placed a substantial burden on Kirchner's ability to practice his religion by denying him a Seder during Passover in 2024. At least one court has denied summary judgment because there was a genuine dispute of material fact about whether the plaintiff was substantially burdened by prison's wholesale denial of Seder trays. *See Brown v. Vail*, No. CV–08–5091, 2011 WL 1900288, at *4 (E.D. Wash. May 19, 2011). The Court assumes that Kirchner has stated a First Amendment violation on these grounds and that his ability to exercise his religion was substantially burdened by this failure.

Nevertheless, the Court grants summary judgment to the defendants on this claim. The undisputed record evidence shows that the prison had a policy of providing Seder trays to Jewish inmates during Passover in 2024. ECF 30-3, at 13. The reason Kirchner did not receive Seder trays

---

[8] Other courts have similarly held that when a prison prevents a detainee from exercising their religion on only one or two occasions, the disruption is de minimis and does not constitute a substantial burden. *See Canell v. Lightner*, 143 F.3d 1210, 1211-14 (9th Cir. 1998) (holding that "relatively short-term and sporadic" interferences with religious exercise do not amount to a "substantial" burden); *Pevia v. Warren*, No. ELH-21-111, 2021 WL 5920726, at *11 (D. Md. Dec. 14, 2021) ("[T]he occasional failure to provide religious services . . . is not a substantial burden on religious exercise."); *see also Halloum v. Ryan*, No. CV 11–0097 (PHX–RCB), 2014 WL 1047144, at *17 (D. Ariz. Mar. 18, 2014) (preventing Muslim inmates from bringing their prayer rugs into the dining room on two occasions during Ramadan did not constitute a substantial burden); *Robinson v. Jimminez*, No. 08–CV–902 (NGG)(LB), 2012 WL 1038917, at *6 (E.D.N.Y. Mar. 6, 2012) (one-time interruption of a service celebrating Rosh Hashana was de minimis); *Smith v. Graziano*, No. 9:08–CV–469 (GLS/RFT), 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010) (cancellation of two religious services was de minimis burden).

and grape juice on April 22 and 23, 2024 is because the delivery driver accidentally delivered the items to the wrong institution. *Id.* Thus, the uncontroverted record evidence shows that the prison had a policy of providing Seder trays and grape juice to Jewish inmates during Passover and the reason those items were not provided to Kirchner during Passover in April 2024 was due to the negligence of a delivery driver. "[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Lovelace*, 472 F.3d at 201. Summary judgment on Kirchner's First Amendment claim for denial of Seder trays and grape juice during Passover is granted to the defendants.

Kirchner has failed to state free exercise claims based on the prison's failure to provide him with kosher for Passover meals and nutritionally adequate meals and the prison's failure to celebrate two nights of Chanukah. Those claims are dismissed without prejudice. Summary judgment is granted to the defendants on Kirchner's free exercise claim based on the prison's failure to provide him with Seder trays and grape juice during Passover.

**b. Retaliation**

"The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (citation modified). To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendants' conduct." *Id.* (citation modified). For purposes of a First Amendment retaliation claim under § 1983, a defendant's conduct adversely affected the plaintiff's First Amendment rights if the conduct "would likely deter a person of ordinary firmness from the

exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (citation modified).

To establish a causal relationship, the plaintiff first must "show [by direct or circumstantial evidence] that his protected activity was 'a substantial or motivating factor' in the defendants' action." *Shaw*, 59 F.4th at 130 (citation modified). That is, "he must show '(1) that the defendants were aware of his engaging in protected activity' and (2) 'some degree of temporal proximity to suggest a causal connection.'" *Id.* at 130–31 (citation modified). Then, "[t]he burden . . . shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity." *Id.* at 131.

Kirchner alleges that he complained to prison officials that he was denied the opportunity "to properly observe Passover." ECF 8, at 25. This is protected First Amendment activity. *See Booker v. S.C. Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017) (recognizing "right to file a prison grievance free from retaliation . . . under the First Amendment"). But Kirchner does not allege an action that adversely affected his First Amendment rights. He alleges merely that, in response to his complaints, he was "verbally abused." ECF 8, at 25. Yet he does not describe what was said or who said it. From the meager allegations in Kirchner's complaint, the Court cannot plausibly infer that the verbal abuse "would likely deter a person of ordinary firmness" from exercising his First Amendment rights. *See Martin*, 858 F.3d at 249. Furthermore, there is widespread agreement among courts that verbal abuse alone is insufficient to constitute an adverse action for a First Amendment retaliation claim. In a similar case, *Carney v. Craven*, the Sixth Circuit held that a plaintiff who was verbally harassed by a prison officer after the plaintiff filed a grievance against the officer "did not state a claim for retaliation in the form of verbal harassment. . . . An inmate has no right to be free from verbal abuse." 40 F. App'x 48, 50 (6th Cir. 2002); *see*

*also Dorsey v. Fisher*, 468 Fed. App'x. 25, 27 (2nd Cir. 2012) (holding that, "absent allegations of physical harm," prisoner's "claims of retaliatory verbal abuse [were insufficient] to suggest that they would deter a prisoner of ordinary firmness from exercising his constitutional rights"); *Sears v. McCoy*, 815 Fed. App'x. 668, 670 (3rd Cir. 2020) (per curiam) (dismissing First Amendment retaliation claim because "[a] prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under § 1983."). And while the test for whether the defendant's retaliatory conduct adversely affected the plaintiff's First Amendment rights is an objective one, *see Martin*, 858 F.3d at 249 (using "a person of ordinary firmness" standard), the verbal abuse that Kirchner received "in response" to his Passover-related grievances in April 2024 did not deter him from filing additional grievances about being served beans and peas in August 2024. *See* ECF 8-6, at 1; ECF 8-7, at 2–3. Kirchner has not plausibly pled an adverse action. Nor has Kirchner adequately pled causation. Kirchner's conclusory statements that "in response to [his] complaints about observing his faith, he has been verbally abused" and that "[t]here was a causal relationship" between those two things, ECF 8, at 25, are insufficient. He does not identify who verbally abused him, whether the person was aware of his protected activity at the time of the verbal abuse, and whether the verbal abused was in response to Kirchner's protected activity.

Kirchner has not stated a First Amendment retaliation claim. This claim is dismissed.[9]

**3. Claims against non-persons**

Finally, Kirchner's § 1983 claims against DPSCS, DOC, and BCCC must be dismissed. Section 1983 creates a cause of action for suit against any "*person* who, under color of any statute,

[9] Since the Court dismisses or grants summary judgment on the § 1983 claims against the defendants sued in their individual capacities, the Court need not address the defendants' qualified immunity argument. However, because Kircher has not "ma[d]e out a violation of a constitutional right," these defendants would be entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983 (emphasis added). DPSCS, DOC, and BCCC are not "persons" and cannot be liable under § 1983. *See Kelly v. Conmed Healthcare Servs.*, No. PWG-18-1441, 2019 WL 3817261, at *3 (D. Md. Aug. 13, 2019) ("Howard County Department of Corrections is not a 'person' and therefore is 'not a proper defendant in a 42 U.S.C. § 1983 action.'"); *Seltzer v. Howard Cnty. Det. Ctr.*, No. GLR-16-1225, 2017 WL 772284, at *1 (D. Md. Feb. 28, 2017) (same). The § 1983 claims against DPSCS, DOC, and BCCC are dismissed with prejudice.

**B. RLUIPA**

Kirchner's RLUIPA claims cannot move forward, either. RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005); *see Holt v. Hobbs*, 574 U.S. 352, 357–58 (2015); *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009); *Lovelace*, 472 F.3d at 186.

Kirchner cannot recover damages under RLUIPA because RLUIPA claims are limited to equitable relief. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (RLUIPA does not authorize claims for official capacity damages); *see also Rendelman*, 569 F.3d at 189 (RLUIPA does not

authorize claims for individual capacity damages). To the extent Kirchner seeks an injunction under RLUIPA, his claim is moot because he is no longer incarcerated at BCCC. *See Rendelman*, 569 F.3d at 186 ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."). Because no type of relief—injunctive, declaratory, or compensatory—is available to Kirchner under RLUIPA, those claims are dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons, Kirchner's § 1983 claims against DPSCS, DOC, BCCC, Green, Morgan, Wallace, Johnson, Mullens, Mitchell, Perry, Nixon, Braxton, Davis, and Massey are dismissed for failure to state a claim, except summary judgment is granted to the defendants on Kirchner's § 1983 claim that his free exercise rights were violated by the prison's failure to give him Seder trays and grape juice. Kirchner's RLUIPA claims are dismissed with prejudice.

A separate order follows.

September 29, 2026
Date

Deborah L. Boardman
United States District Judge